UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
BONG CHUL KIM,

      Plaintiff,

 - against -

BOGOPA SERVICES CORPORATION,

      Defendants.
-----------------------------------------------------------x

MEMORANDUM AND ORDER

15-CV-2174 (ILG) (LB)

GLASSER, Senior United States District Judge:

  Plaintiff Bong Chul Kim ("Kim" or "Plaintiff") brings this action against Bogopa Services Corporation ("Bogopa" or "Defendant') which owns and operates a chain of supermarkets in New York, New Jersey, and Connecticut. ECF 1, ("Compl.") ¶ 9. Plaintiff, an employee of Bogopa from 2005 until his termination in October 2014, alleges that Defendant failed to provide him with adequate notice—and thereby interfered with his rights—in violation of the Family Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq ("FMLA"). Plaintiff also alleges that Defendant unlawfully discriminated and retaliated against him due to his alleged disability in violation of New York City Admin. Code § 8-101 et seq ("NYCHRL"). Pending now before the Court is Defendant's motion for summary judgment. For the reasons that follow, Defendant's motion is GRANTED.

## FACTUAL BACKGROUND

  The following material facts, drawn from the parties' Local Civil Rule 56.1 Statements and evidentiary submissions, are undisputed unless otherwise noted.

  Plaintiff graduated from high school, his highest level of education, in Korea in 1965. ECF 30-1, Defendant's Rule 56.1 Statement of Undisputed Facts ("Def. Rule 56.1 St.") at ¶ 1.

1

After emigrating to the United States in 1980, he worked first in a vegetable store and then in a nail salon prior to being hired by the Defendant in 2005. Id. ¶¶ 4-7. Kim was first diagnosed with depression in or about 2013. Id. ¶ 71. Medical records identify his condition as "Bipolar I disorder, mania with psychotic features." ECF 35 ("Berger Decl.") Exh. GG. He is treated for this condition by Doctors Cho and Lee. Def. Rule. 56.1 St. ¶ 72; Kim Dep. 84:8-20.

I. Plaintiff's Employment at Bogopa

Plaintiff began work at Bogopa in April 2005 as a "Produce Manager" at store #14, the "Junction Boulevard" location. Def. Rule 56.1 St. ¶¶ 5-8. In this role, Plaintiff supervised and disciplined employees, including issuing warnings to those employees who violated the "company's regulations and policy." Id. ¶¶ 9, 11-13, 20. As with other employees, Plaintiff was required to punch in and out to record his working hours. Id. ¶ 10. During his tenure, Bogopa issued employee handbooks in 2006 and 2008 containing the company's FMLA policy. ECF 30 ("Beekman Decl.") Exhs. H, I. The parties dispute whether Bogopa maintained FMLA postings in those stores where Plaintiff was employed. See Def. Rule 56.1 St. ¶ 15; Pl. Rule 56.1 St. ¶ 15.

Plaintiff was not the subject of disciplinary action in his first seven years of employment with Bogopa. However, for the nearly two year period May 2012 to February 2014, Kim received three Employee Warning Reports ("EWR") for conduct violations including an "unclean" produce section in his store, missing a day of work, and improper disposal of a cigarette. Def. Rule 56.1 St. ¶¶ 21, 23, 24; Beekman Decl. Exh. M. Plaintiff did not challenge these warnings. At an unknown date during this two year period, Plaintiff was reassigned from store #14, to store #30 in the Bronx. Def. Rule 56.1 St. ¶ 23.

On February 26-27, 2014, Plaintiff received performance evaluations including ratings of two, "needs improvement" and one, "counsel required." Def. Rule. 56.1 St. ¶¶ 29, 30. Plaintiff

submits that he informed one of his evaluators, William Ahn, about his depression. ECF 34, Affidavit of Plaintiff Kim, ("Kim Aff.") ¶ 5. Months later, on July 1, 2014, Kim was demoted from Produce Manager to Department Clerk due to poor sales performance in his department. Def. Rule. 56.1 St. ¶¶ 33, 34; ECF 30 Exh. D. ("Kevin Kim Dep.") 15:2-9; ECF 30 Exh. N. With the demotion, Plaintiff was transferred from store #30 to store #41 in Long Island City, where he reported to Peter Suh and Michael Lee. Id. ¶ 35; Suh Rep. Aff. ¶ 1.

II. Absence from Work

Kim did not report to work, unexcused, on August 7, 8, 9, or 10, and arrived late to work on August 11 and 12, 2014. Def. Rule 56.1 St. ¶ 49; Pl. Rule 56.1 St. ¶ 49; Beekman Decl. Exh. Q. Pending an investigation of these absences, he was suspended from work from August 13- 18, 2014. Def. Rule 56.1 St. ¶¶ 38, 42, 44. The suspension form includes a notation of "REFUSED TO SIGN" next to the line for Kim's signature, and includes a check next to the statement "I DO NOT agree with the company statement." Beekman Decl. Exh. P. That checkmark notwithstanding, Plaintiff testified he does not remember seeing this report. Def. Rule 56.1 St. ¶ 38, 40. On August 19, 2014, Kim returned to work and received a warning from supervisor Michael Lee stating, "all infractions have been confirmed . . . Mr. Kim is hereby given a last chance final warning and any infraction hereinafter will result in termination." Id. ¶¶ 46- 47; Beekman Decl. Exh. R.

III. Vacation Leave and Additional Time Off

Kim took approved vacation leave from August 25 – September 7, 2014. Id. ¶ 53. On September 5th, he had an appointment with Dr. Lee who noted that Plaintiff—who had previously been diagnosed with "Schizoaffective Disorder"—had "relapsed," meaning he "had a setback and is worse." Berger Decl. Exh. E. That same day, Kim called his supervisor, Mr. Suh,

and advised that he was going to seek "medical help and treatment for a psychiatric illness," and had just booked travel to arrive in Korea on September 7, 2014, the day his vacation was scheduled to end. ECF 30-34 ("Suh Aff.") ¶ 17. See also Kevin Kim Dep. 8:12-20. He did not provide a date of return. During that call, Mr. Suh advised Plaintiff that he would need to file a request for a leave of absence. Def. Rule 56.1 St. ¶ 55. The following day, September 6, 2014, Mr. Suh again advised Kim that he needed to provide "proper medical documentation," and established a deadline of September 22, 2014 to do so. Id. ¶ 56. Beekman Decl. Exh. X. Kim travelled to Korea, and while there, sought treatment at Yonsei University Hospital. Kim Dep. 86:9-16. He did not contact Bogopa by September 22, 2014 as required, and was listed as "No call/no show-job abandonment." Def. Rule 56.1 St. ¶ 57.

On September 27, 2014, Kim produced a letter to Defendant from Dr. Cho stating that he had "recovered from acute manic episode" and could return to work on September 29, 2014. Beekman Decl. Exh W. In response, Bogopa advised, "[b]efore we can allow you to return to work, we need you to provide a doctor's note that specifically states that you are cleared to return . . . without any medical restrictions." Beekman Decl. Exh. X. On September 30, 2014, Kim provided that note stating he was "psychiatrically cleared" to return. ECF 30 Exh. Y.

IV. Final Resumption of Work

Plaintiff returned to work on October 6, 2014, and did not request additional leave for his psychiatric condition thereafter. Def. Rule 56.1 St. ¶ 64; Beekman Decl. Exh Q. He submits that if he "knew that additional leave was available, [he] would have taken it." Kim Aff. ¶ 10. Following his return to work, Kim requested a reduced work schedule in order to "take more time and enjoy." Def. Rule 56.1 St. ¶ 65. Defendant obliged and reduced his hours. Mr. Suh

submits that Kim did not "mention his disability or indicate that he wanted the reduction of his hours as a reasonable accommodation." Rep. Aff. Suh ¶ 9.

On October 8, 2014, Kim arrived to work approximately two hours late and left four hours early. Beekman Decl. Exh. Q. He testified that he received approval for the schedule change so that he could go to the hospital, which his supervisor, Mr. Suh, denies. Def. Rule 56.1 St. ¶ 67; Kim Dep. 75:9-23; 80:3-5; Suh Aff. ¶ 25. On Monday, October 13, while scheduled to work from 2:00-8:00pm, he worked from approximately 10:00am - 1:00 pm, and 2:00 pm - 5:29 pm. Id. That day, one week after he returned from leave, Kim was terminated. The reason given was his tardiness and early departure on October 8, 2014. Def. Rule 56.1 St. ¶ 69; Berger Decl. Exh. CC.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 720 (2d Cir. 2010) (citations and quotation omitted). "A fact is material if it might affect the outcome of the suit under the governing law." Id. In deciding a motion for summary judgment, the court must "construe the facts in the light most favorable to the nonmoving party" and "resolve all ambiguities and draw all reasonable inferences against the movant." Brod v. Omya, Inc., 653 F.3d 156, 164 (2d Cir. 2011) (quotation omitted).

## FEDERAL LAW CLAIM

Congress enacted the FMLA to address the issue of "inadequate job security for employees who have serious health conditions that prevent them from working for temporary

5

periods." 29 U.S.C. § 2601(a)(4) (emphasis added). In that regard, the Act establishes an entitlement to twelve weeks of unpaid leave for an employee afflicted with a health condition so serious as to render him "<u>unable to perform the functions</u>" of his position. 29 U.S.C. §§ 2601(b)(2); 2612(a)(1)(D) (emphasis added). Section 2615(a)(1) of the Act provides that it "shall be unlawful for any employer to interfere" with an employees' exercise of FMLA rights.

Here, Plaintiff alleges that the Defendant unlawfully interfered with his FMLA rights in failing to provide him with notice of those rights. An employer interferes with FMLA rights where it fails to provide required notice, <u>and</u> that failure causes the employee to forfeit leave <u>to which he was entitled</u>. See <u>Sarno v. Douglas Elliman-Gibbons & Ives, Inc.</u>, 183 F.3d 155, 157 (2d Cir. 1999). As discussed below, Plaintiff has not established that he was <u>entitled</u> to FMLA leave that was denied him. As such, summary judgment is appropriate for the Defendant.

It is undisputed that after several weeks of absence from work, ostensibly to seek treatment for his psychiatric condition in Korea, Plaintiff provided doctor's notes indicating that he had "recovered" and was "psychiatrically cleared," and could return to his position as of September 29, 2014. ECF 30 Exh. Y. This certification clearly demonstrates that he was not "unable to perform the functions" of his position at that time, and as such, Defendant could not have interfered with his FMLA rights by failing to provide notice of additional FMLA leave available to him, as there was none. See <u>Wallner v. Hilliard</u>, 590 F. App'x 546, 552 (6th Cir. 2014) (noting that the FMLA does not guarantee a right to a full twelve weeks of leave despite employee and doctor's statements that she was able to return to work before then); <u>Terwilliger v. Howard Mem'l Hosp.</u>, No. 09-CV-4055, 2011 WL 5827201, at *2 (W.D. Ark. Nov. 18, 2011) (concluding that where employee's physician released her to return to work after eleven weeks of

FMLA leave, she no longer had "a serious health condition that rendered her unable to perform her job" and thus, "was entitled to no further benefit under the FMLA").

Kim complains, in effect, that he was not notified of FMLA rights for which he didn't qualify and had no entitlement. In addition, it is not disputed that he unilaterally flew to Korea for medical treatment and failed to provide the required request for leave of absence as directed and suffered no adverse employment decision. On the contrary, he was permitted to return to work despite the confirmation of his attendance infractions and a finding of "no call/no show-job abandonment." For the foregoing reasons, summary judgment is GRANTED for the Defendant as to the FMLA interference claim.

## STATE LAW CLAIMS

I. **NYCHRL Discrimination Claim**

Plaintiff alleges Bogopa violated NYCHRL § 8-107 in that it "discriminated against Plaintiff . . . by terminating him on account of his disability or perceived disability." Compl. ¶ 33. That statute makes it "an unlawful discriminatory practice" for an employer to "discharge from employment" or "discriminate against" an employee "in terms, conditions or privileges of employment" due to his disability. NYCHRL § 8–107(1)(a). Discrimination claims pursuant to the NYCHRL are subject to the burden-shifting framework established by the Supreme Court in McDonnell Douglas. See Campbell v. Cellco P'ship, 860 F. Supp. 2d 284, 295 (S.D.N.Y. 2012). Under that test, the initial burden is on the plaintiff to present a prima facie case of discrimination, after which the burden shifts to the defendant to put forth some legitimate, non-discriminatory justification for the challenged action. The burden then shifts back to the plaintiff to demonstrate that the defendant's proffered reason is pretextual. McDonnell Douglas Corp. v.

Green, 411 U.S. 792, 802-804 (1973) holding modified by Hazen Paper Co. v. Biggins, 507 U.S. 604 (1993).

### a. Plaintiff Has Established a Prima Facie Case

To set out a prima facie case of discrimination, Plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination. Ruiz v. Cty. of Rockland, 609 F.3d 486, 492 (2d Cir. 2010) (citation omitted). Plaintiff's burden at this stage is "minimal." Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir.2001) (internal quotation marks and citation omitted). The parties do not dispute that Plaintiff was a member of a protected class, and Plaintiff clearly suffered an adverse employment action in his termination. See Hrisinko v. N.Y. City Dep't of Educ., 369 F. App'x 232, 235 (2d Cir. 2010). Therefore, to state a prima facie case, Plaintiff must establish his qualification for the position, and that his termination took place under circumstances giving rise to an inference of discrimination.

To establish qualification for his position, "all that is required is that the plaintiff establish basic eligibility for the position at issue." Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 92 (2d Cir. 2001), as amended (June 6, 2001). Here, Kim satisfies his burden in that he was employed by Bogopa for nine years, and held his job for seven of those years without disciplinary proceedings. Based on this record, a reasonable trier of fact could conclude he was qualified for his position. As to the second requirement Plaintiff must prove, an inference of discrimination can be drawn from "the sequence of events leading to the plaintiff's discharge." Abdu–Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 468 (2d Cir. 2001) (citation omitted). In particular, timing of an employee's termination "may be sufficient to establish an inference of

8

discrimination at the first, prima facie stage." Ramsaran v. Booz & Co. (N.A.) Inc., No. 1:14-CV-708-GHW, 2015 WL 5008744, at *12 (S.D.N.Y. Aug. 24, 2015) (internal quotation marks and citation omitted); see also Pellegrino v. Cty. of Orange, 313 F. Supp. 2d 303, 315 (S.D.N.Y. 2004) (At the prima facie stage, "[e]vidence of temporal proximity between an employee's request for . . . leave and her termination is sufficient to establish an inference of discrimination"). Recognizing that NYCHRL claims are to be construed "broadly in favor of discrimination plaintiffs," Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013) (citation omitted), the temporal proximity between Kim requesting leave, ostensibly due to his mental health condition, and thereafter, his termination, could give rise to an inference of discrimination.

### b. Bogopa Had a Legitimate, Non-Discriminatory Basis for Terminating Kim

Once the plaintiff has demonstrated a prima facie case, the burden shifts to the defendant to put forth some legitimate, non-discriminatory justification for its action. Here, Kim received warnings for attendance, tardiness, and conduct violations. While on a "last chance warning," Defendant submits that Plaintiff arrived at work late and left early on October 8, 2014 without permission, and was therefore terminated. With that, Defendant has presented a legitimate, non-discriminatory justification for the adverse action.

### c. Plaintiff Has Not Shown That Defendant's Proffered Reason was Pretextual

Following a defendant's provision of a non-discriminatory justification, the burden returns to the plaintiff to demonstrate that the proffered reason is pretextual. Defendant will be entitled to summary judgment "unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." James v. N.Y. Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000). It is uncontested that on October 8, 2014, Plaintiff arrived to work approximately two

9

hours late and left four hours early. What remains in dispute is whether Plaintiff received permission for the schedule adjustment. However, resolving this dispute in Plaintiff's favor and assuming he had permission to modify his hours but nevertheless was fired for it does not satisfy his burden here. To establish pretext, Plaintiff must do more than set out a prima facie case and put forward "evidence from which a fact finder could find that the employer's explanation . . . was false." LaGrande v. Key Bank Nat. Ass'n, 393 F. Supp. 2d 213, 220 (S.D.N.Y. 2005) (citing, James, 233 F.3d at 153).

Plaintiff's assertion of disability discrimination is an ipse dixit. Without any evidence of discriminatory animus, the crux of his case for pretext is the same as his prima facie case: the proximity in time between the disclosure of his condition and his termination. While closeness in time may be sufficient at the prima facie stage, it is "insufficient to carry plaintiff's burden" at the pretext stage. Pellegrino, 313 F. Supp. 2d at 316; see also Forde v. Beth Israel Med. Ctr., 546 F. Supp. 2d 142, 152 (S.D.N.Y. 2008). As such, Plaintiff has not raised an issue of fact tending to show that his termination was a pretext for discrimination, and Defendant is entitled to summary judgment on the NYCHRL discrimination claim.

The foregoing discussion of the applicable principles to a case such as this may be fairly described as gratuitous. An objective evaluation of the undisputed facts of this narrative compels the conclusion that there isn't within it a jot or a tittle to support even a whisper of an inference that he was terminated as the victim of disability discrimination, given his return to work after his doctor's certification that he was fit for work without limitation, rather than for his cavalier attention to reporting for work.

## II. NYCHRL Retaliation Claim

Plaintiff further contends that Bogopa terminated him "in retaliation for complaining about Defendant's discriminatory conduct and for taking disability leave" in violation of the NYCHRL. Compl. ¶ 39. A plaintiff alleging retaliation under the NYCHRL must show: 1) he engaged in a protected activity; 2) his employer was aware of that activity; 3) he suffered an action that would be reasonably likely to deter a person from engaging in a protected activity; and 4) that there was a causal connection between the protected activity and the action." Pilgrim v. McGraw–Hill Cos., 599 F.Supp.2d 462, 469 (S.D.N.Y.2009). Plaintiff has not shown he was engaged in a protected activity. There is no evidence that he "opposed" or "filed a complaint" related to discriminatory activity at any point during his employment. See NYCHRL § 8-107(7). Indeed, his testimony established that he never spoke to anyone at Bogopa regarding his alleged unfair treatment. Kim. Dep. 100:20-25. As such, summary judgment is GRANTED for the Defendant as to the NYCHRL retaliation claim.

## CONCLUSION

For the reasons stated herein, Defendants' motion for summary judgment is GRANTED. SO ORDERED.

Dated: Brooklyn, New York
July 28, 2017

\_\_\_\_/s/_____
I. Leo Glasser
Senior United States District Judge